

1 PHILLIP A. TALBERT
Acting United States Attorney
2 JOHN K. VINCENT
MICHAEL M. BECKWITH
3 KEVIN C. KHASIGIAN
Assistant U. S. Attorneys
4 501 I Street, Suite 10-100
Sacramento, CA 95814
5 Telephone: (916) 554-2700

FILED

AUG 1 6 2016

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11 UNITED STATES OF AMERICA,              2:12-CR-00294-TLN

12            Plaintiff,                  GOVERNMENT'S EX PARTE
                                          MOTION FOR REVOCATION OF
13       v.                               RELEASE AND FOR ARREST
                                          WARRANT FOR BART VOLEN
14 BART WAYNE VOLEN,                      PURSUANT TO 18 U.S.C. § 3148(b)

15            Defendant.                  (UNDER SEAL)

16

17

18       The government moves pursuant to 18 U.S.C. § 3148(b) for the revocation of Bart Volen's

19 order of release (ECF No. 19, 37) and for his arrest.

20       The basis for the government's motion is contained in the attached Affidavit of Daniel M.

21 Norman, Special Agent with the Internal Revenue Service, Criminal Investigation (IRS-CI).  In

22 summary, there is clear and convincing evidence that Volen, while under supervised release, provided

23 false information to the probation officer who is preparing his presentence report.  And there is

24 probable cause to believe that Volen structured payments for two parcels of land in the San Diego

25 area to avoid cash reporting requirements under federal law.

26       Volen was released on bond on approximately August 20, 2012.  One of the conditions of his

27 release was that he "not commit any offense in violation of federal, state or local law while on release

28 in this case."  He was further advised that "[v]iolation of any condition of your release may also result

1

1  in arrest by a law enforcement officer, the immediate issuance of a warrant for your arrest, revocation

2  of release, and order of detention, and a prosecution for contempt which could result in a possible

3  term of imprisonment and/or a fine."

4        On the basis of the facts set forth in Special Agent Norman's affidavit, and in accordance with

5  18 U.S.C. § 3148(b), the United States requests that the Court revoke Bart Volen's release and issue a

6  warrant for his arrest.  As soon as practical, Bart Volen should be brought before the Court for a

7  hearing at which the government will demonstrate probable cause that Bart Volen has committed a

8  new crime while on release, and that Volen is unlikely to abide by any condition or combination of

9  conditions of release.18 U.S.C. § 3148(b)(1) & (2).

10

11

12  Dated: August 15, 2016                    PHILLIP A. TALBERT
                                       Acting United States Attorney

13

14                                        /s/ John K. Vincent
                                      JOHN K. VINCENT

15                                        Assistant U.S. Attorney

16

17

18

19

20

21

22

23

24

25

26

27

28

# AFFIDAVIT OF DANIEL M. NORMAN

I, Daniel M. Norman, Special Agent with the Internal Revenue Service, Criminal Investigation (IRS-CI), declare as follows:

## INTRODUCTION

1.   As a result of my review of documents as well as interviews of witnesses, I have become familiar with the facts and circumstances of this investigation.  The information set forth in this affidavit reflects my personal knowledge, or has been provided to me by other law enforcement officers, sources, victims, and/or interested parties.  I have also received information through the review of various database searches.  I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are relevant in connection with this application.  The basis of my opinions and conclusions set forth in this Affidavit are the result of my training, experience, and investigation to date.

2.   I have been a Special Agent with IRS-CI since 2009.  I am presently assigned to the Sacramento, California office.

3.   I was the case agent in the investigation and prosecution of Bart Volen, Darrell Hinz, and Gregory Baker.

UNDERLYING CASE

4.   Defendants Volen, Hinz, and Baker were charged on April 11, 2013 in a 36-count Superseding Indictment with Conspiracy to Commit Mail and Wire Fraud, Wire Fraud, Conspiracy to Launder Monetary Instruments, Money Laundering, and Subscribing to False Tax Returns.

5.   Defendant Volen pleaded guilty on June 12, 2014 to conspiracy to commit mail and wire fraud, money laundering, and tax fraud.

6.   Both Baker and Hinz pleaded guilty to various offenses included in the Superseding Indictment and have been sentenced. Volen's judgment and sentencing date is presently scheduled for August 18, 2016.

7.   The three defendants defrauded the United Auburn Indian Community (UAIC). In or about October 2006, Volen was hired by the UAIC to act as the construction manager on their Indian Hills Office Project (IHOP). Baker was the Tribal Administrator for the UAIC during this time. In that role, he was supposed to manage and supervise the IHOP project and approve all invoices submitted to the UAIC for payment. Hinz was the Project Manager/Consultant, and one of his duties was to insure quality control for the project.

2

8.    Between in or about October 2006 and December 2007, Volen inflated or caused to be inflated cost proposals that Volen then submitted to the UAIC for payment.  Volen also submitted to the UAIC falsely inflated change order invoices or such invoices for work that was never done. .

9.    Baker and Hinz approved the false cost proposals/invoices because Volen paid them to do so.  Among other things, Volen paid Hinz approximately $7,821,866 between October 2006 and August 2007.  Hinz, in turn, shared with Baker approximately $1.4 million of the money that Hinz received from Volen.

VOLEN'S MISCONDUCT WHILE ON PRETRIAL SUPERVISION

10.   As noted above, defendant Volen is awaiting sentencing. As part of the sentencing process, Volen supplied information to the Probation Officer concerning two parcels of land that he owned.  He claimed that the purchase price of each was $5,000.

11.   I have learned that the purchase prices that Volen provided for those parcels were false and that he understated the value of those two parcels.  I have learned that Volen paid approximately $140,000 for the two parcels.  Of that amount, approximately $30,000 was for delinquent property taxes, approximately $10,000 was for escrow fees and costs, and approximately $100,000 went to the seller of the two parcels.

12.   I have also learned that of the sum that went to the seller, approximately $90,000 in cash was delivered outside of

3

escrow.  Volen arranged this cash payment apparently to make it
look as if he had paid only $10,000 total for the two parcels.

13.  In addition, I have learned that Volen structured his
payments for the parcels to avoid cash reporting requirements
under law.

THE PURCHASE OF THE TWO PARCELS

14.  As part of the sentencing process, Volen, through his
attorney,1 supplied information to the probation officer.
Included in that information was a two-page spreadsheet listing
Volen's properties.  Listed on the spreadsheet were two parcels,
identified as APN 444-633-01-00 and APN 444-633-04-00, which
Volen represented were purchased for $5,000 apiece.

15.  A Google search of the APNs revealed the address associated
with these two parcels is collectively referred to as 3841 Brant
Street, San Diego, CA.  A LexisNexis Accurint query revealed
that a person residing in Las Vegas, NV, sold the Brant Street
property to "Mitzvah Holdings LLC" in late September 2015 for
$10,000.  This sales price matches the aggregated purchase
prices reflected on Volen's property spreadsheet for the two
APNs.

---

1 The United States is in no way insinuating that Volen's
attorney was complicit in his actions.

4

16.   An online query of the California Secretary of State database, which stores corporate filings, revealed that Mitzvah Holdings, LLC was established on July 15, 2015, with an address in San Diego, CA.   The "Agent for Service of Process" is listed as Bart Volen.

17.   The grant deed transferring ownership of the Brant Street property to Mitzvah Holdings LLC was filed at the San Diego County Recorder's Office on September 30, 2015.   The recorded grant deed was mailed to "Bart Volen, Mitzvah Holdings LLC." The transfer tax reflects a sales price of approximately $10,000.

*Interview with the Seller*

18.   On August 3 and 10, 2016, I contacted the seller of the Brant Street Properties. The following is pertinent information supplied by the seller:

a.   The seller owned the two parcels at issue on Brant Street in San Diego, CA.

b. The seller's initial asking price was $400,000, but the seller eventually dropped the price to $200,000.

c. While the parcels were on the market and after the real estate listing expired, Bart Volen called the seller expressing interest in buying the parcels. Volen kept trying to have the seller lower the price. VOLEN told the seller that there was an environmental

problem with the properties relating to an endangered
species.  He had other people on the phone with him
talking about an environmental report.

   d. The seller eventually agreed to sell the parcels to
Volen.  The transaction occurred as follows:

      i. Volen deposited around $50,000 into escrow.
This covered approximately $30,000 in
delinquent property taxes, approximately
$10,000 in escrow fees/costs, and then the
seller received a check for approximately
$10,000.

     ii. Volen also paid the seller $90,000 in cash
outside of escrow.  This cash was in a bank
bag with a zipper and was delivered to the
seller on September 29, 2015, by a friend of
Volen's.

19.  A Google search revealed that the Brant Street property is
currently listed for sale by commercial real estate brokers
Cushman & Wakefield with an asking price of $1,450,000.

STRUCTURING

*Relevant Law*

20.  Structuring refers to the manipulating of financial
transactions to evade currency reporting requirements.

6

21.   Under the Bank Secrecy Act (31 U.S.C. §§ 5313 et seq.), and related regulations, including without limitation 31 C.F.R. § § 1010.306, and § § 1010.310 through 1010.314, domestic financial institutions are generally required to prepare and submit Currency Transaction Reports ("CTRs") to report large cash transactions (over $10,000 in currency) every time they occur at the financial institution. There are some exceptions for qualifying businesses and government agencies, not applicable here.

22.   In order to complete the CTR form, the financial institution is required to verify and record the name and address of the person presenting a transaction, and the identity, account number, and the Social Security number or taxpayer identification number, if any, of any person for whom a transaction is to be effected. This verification must be made with an identity document, such as a driver's license or passport.   These CTR rules apply to the deposit, withdrawal, or exchange of currency; or other payment or transfer, by, through, or to such financial institutions, which involves a transaction in currency of more than $10,000.

23.   It is a felony under 31 U.S.C. § 5324(a)(3) to, for the purpose of evading reporting requirements, structure or assist in structuring, or attempt to structure or assist in structuring, any currency transaction with one or more domestic

financial institutions in an amount below the $10,000.01 currency transaction reporting (CTR) threshold.

24.   "Structuring" includes, but is not limited to: breaking down a single sum of currency exceeding $10,000 into smaller sums, including sums at or below $10,000; or the conduct of a transaction, or series of currency transactions, including transactions at or below $10,000. The transaction or transactions need not exceed the $10,000 reporting threshold at any single financial institution on any single day in order to constitute structuring within the meaning of this definition.

25.   Title 31 U.S.C. § 5324 (a)(3) requires proof that the defendant acted with the requisite intent to evade the CTR reporting requirement discussed above, but does not require proof that the defendant acted with knowledge that his conduct was illegal. United States v. Pang, 362 F.3d 1187, 1193-1194 (9th Cir. 2004).

26.   According to 31 U.S.C § 5324(a)(3), the transaction must take place with a "domestic financial institution."  Title 31 U.S.C § 5312(a)(2) defines the various types of financial institutions.  One of the definitions given under 31 U.S.C § 5312(a)(2)(E) for a financial institution is "any credit union."

     *Volen's Structuring Activity*

27.   I have been provided with an email sent on September 28, 2015 by Beth Palle, Member Service Supervisor of the San Diego

County Credit Union (SDCCU) to BSA Compliance.  In the email,
Ms. Palle lists the account number for "Metzvah Holdings."  The
subject line for the email reads "Member asking questions about
the limites [sic]."

The following is the body of the email, in relevant part:

Good Morning,

Member was asking questions about the amount he can deposit
to avoid the reporting.  He had $10,000.00 but only
deposited $9,000.00.  He is coming back tomorrow with a
cashier's check from another bank to wire for an escrow.
It may not be something but I wanted to let you know.  It
was kind of weird because he wanted me to look it up by the
name of the business.  When I asked him to spell it he kept
saying Metvah.  I threw the z in there and it came up.  I
checks [sic] ID and he is the authorized signer but I would
think he should know how to spell the name of his company.2

28.  Based on the facts set forth in this affidavit, I believe
that the Member to whom Ms. Palle is referring is Bart Volen.

29.  It appears that the $9,000 deposit to which Ms. Palle made
reference was used by Bart Volen to buy the Brant property.

30.  Records obtained from the SDCCU for the account held in the
name of Mitzvah Holdings with the account number identified in
Ms. Palle's email reflect the following:

---

2 The account at SDCCU was in the name of Mitzvah Holdings, and
the address for Mitzvah Holdings is an address owned by Bart
Volen.  And, as noted earlier, the "Agent for Service of
Process" for Mitzvah Holdings is listed with the state as Bart
Volen.

9

a. On September 28, 2015, the day of Ms. Palle's email, a deposit of $9,000 in cash was made to the Mitzvah Holdings account at SDCCU, where Ms. Palle worked.  I believe that this deposit is the one to which Ms. Palle made reference in her email.  The amount available in the Mitzvah Holdings account before the $9,000 deposit was approximately $15,676;

b. The next day - September 29, 2015 - a deposit of $10,000 in cash was made to the Mitzvah Holdings account at SDCCU;

c. The same day - September 29, 2015 - a deposit of $10,000 in the form of a cashier's check bearing number 031003383 drawn on California Coast Credit Union (CCCU) was made to the Mitzvah Holdings account at SDCCU.  This cashier's check was dated September 29, 2015 and was made payable to "Mitzvah Holdings LLC."3 Printed at the bottom is: "REF: PURCHASE OF HILLCREST LAND".4

---

3 During my investigation of the fraud perpetrated on the UAIC, I reviewed hundreds of documents containing the signature of Bart VOLEN and have become familiar with his signature. Although I am not a handwriting expert, the endorsement signature on the back of the cashier's check appears to me to be similar to the signature of Bart VOLEN.

4 A Google search revealed that Hillcrest is a small, affluent neighborhood in the San Diego area northwest of Balboa Park and south of Mission Valley.  The map on Google that outlines the Hillcrest area includes 3841 Brant Street within its confines.

d. The deposit of $10,000 cash and the $10,000 cashier's
check brought the balance of the Mitzvah Holdings account
at SDCCU to approximately $44,676.

31.  On September 29, 2015, a wire transfer of $41,854.80 was
sent from the Mitzvah Holdings account at SDCCU to MUFG Union
Bank for the receiver Chicago Title Company.  Referenced in the
wire request form is "MITZVAH HOLDINGS LLC/LAND ON BRANT."5

32.  In other words, the wire was part of the money used to buy
the two parcels that constituted 3841 Brant Street in San Diego.
Indeed, this wire transfer took place on the same day that
$90,000 in cash in a bag was delivered to the seller of the
Brant Street property.

33.  As for the $10,000 cashier's check from CCCU just
mentioned, records from that credit union as well as information
supplied by a compliance officer there establish that on
September 29, 2015, VOLEN purchased cashier's check number
0310033883 for $10,000 made payable to Mitzvah Holdings LLC.  On
that same date, September 29, 2015, VOLEN deposited $5,000 in
cash into his account at CCCU, bringing the balance to
$11,592.32.  He subsequently purchased the above described

---

5 A signature on the wire transfer request appears to me to be
similar to the signature of Bart Volen.

$10,000 cashier's check via a withdrawal from the same account, leaving a balance of $1,592.32.

34.     Based on the facts set forth above, I believe that there is probable cause to believe that Volen engaged in structuring. There is probable cause to believe that Volen deposited $9,000 in cash into the Mitzvah Holdings account at SDCCU on September 28, 2016 to ensure that he stayed under the reporting limit. Then, on the following day, rather than just deposit at the same time in the same institution the $15,000 in cash that he must have had, he deposited $10,000 in cash at SDCCU and used another $5,000 in cash to purchase a $10,000 cashier's check at CCCU, which check he later deposited at SDCCU.   There is probable cause to believe that all of these actions were taken after he inquired about the amount he could deposit to avoid the reporting requirement.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Approved as to Form.

_Kevin Khasigian, AUSA_

Sworn by telephone on this date   8-15-2016

_Daniel M. Norman_
Daniel M. Norman
Special Agent, IRS-CI

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE                    12